UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASMEROM GEBRESELASSIE,<br>Petitioner,<br>v.<br>SCOTT FRAUENHEIM,<br>Respondent. | Case No. 16-cv-06195-WHO (PR)<br><br>**ORDER DENYING MOTION FOR RELIEF**<br><br>Dkt. No. 39 |

## INTRODUCTION

Petitioner Asmerom Gebreselassie moves for relief from the order denying his habeas petition, noting mistakes I made in the recitation of the facts in my Order Denying Petition. (Dkt. No. 33.) I have reconsidered his petition in light of the corrected record, and conclude again that he is not entitled to habeas relief. The evidence of his guilt is strong. His motion also reargues claims that I have already rejected. For these reasons, Gebreselassie's motion is DENIED.

## BACKGROUND

Gebreselassie's federal habeas petition was denied, and judgment entered in favor of respondent, on October 9, 2018. (Dkt. Nos. 33 and 34.) He then simultaneously filed a Notice of Appeal and a motion for relief from the judgment. (Dkt. Nos. 37 and 39.)

In his motion, Gebreselassie correctly contends that I made some errors in my recitation of the facts. The factual summary below omits those errors. I will address the lack of legal significance of my mistakes, given the strength of the evidence against Gebreselassie, in the Discussion section of this Order.

While the Mehari family was gathered at Winta's house on Thanksgiving Day in 2006, Gebreselassie shot to death Winta Mehari, his deceased brother Abraham's widow;

Regbe Bahrenegasi, Winta's mother; and Yonas Mehari, Winta's brother;.[1] (Ans., State Appellate Opinion, Dkt. No. 26-24 at 352.)[2] He also shot Yehferom Mehari, Winta's brother, who was wounded but survived. (*Id.* at 356.) Angesom Mehari, another brother, was seriously injured when he jumped out a window to escape. (*Id.*)

Gebreselassie believed that Winta and her family had murdered his brother Abraham, who died the previous March. (*Id.* at 354.) Although there was no evidence of foul play in Abraham's death, Gebreselassie always suspected the Mehari family of murder.[3] (*Id.*) He testified at trial that Winta "was the most evil wife and the most evil human being on this earth" and that the Meharis were the "most evil family in the whole world." (Ans., Dkt. No. 26-17 at 555, 559.) He pressed the police to investigate further, but they declined. (*Id.*, Dkt. No. 26-24 at 354.) Because of his continued accusations, the Meharis banned Gebreselassie from their house. (*Id.* at 355.) They agreed that they would call the police if he ever came there again. (*Id.*)

The theory of the prosecution was that Gebreselassie murdered Winta and the others as revenge for Abraham's death. It asserted that Gebreselassie's co-defendant (and

---

[1] The Mehari and Gebreselassie families, both native to Ethiopia, were very close, "like one family," and lived in the same apartment complex in Oakland. (Ans., Dkt. No. 26-24 at 353-354.)

[2] *People v. Gebreselassie*, Nos. A133350 and A134246, 2015 WL 5146199 (Cal. Ct. App. Sept. 2, 2015), as modified by denial of reh'g (Sept. 25, 2015).

[3] Gebreselassie contends there was evidence of homicide. He alleges Winta lied during the 911 call she made when Abraham was ill. (Traverse, Dkt. No. 31-5 at 5-7.) According to petitioner, she told the 911 operator that she was alone with Abraham, but an audio expert who reviewed the 911 recording testified that he heard other voices during that call, one of which used the Amharic word "gelagliw." This word, in the expert's description, has multiple meanings, including "to separate two fighting parties, or it could mean to relieve someone who is in distress or pain." (Ans., Reporter's Transcript, Dkt. No. 26-16 at 833.) "It has appeared in Amharic literature in the past when say a wounded army colleague would ask another one for mercy killing." (*Id.*) However, "the common meaning of the word would be first to separate two or more parties who are fighting." (*Id.* at 843.) Even if Winta had lied during the telephone call, it is not evidence of homicide, or at least not evidence on which a reasonable investigation and prosecution could be based. Also, another person allegedly used "gelagliw," not Winta. Criminal intent cannot be assigned to her merely because someone else (might have) said that word in her presence, a word of multiple meanings.

brother) Tewodros helped him by signaling to him when the Meharis were gathered and then by letting him into their house.[4] (*Id.* at 357.) Yehferom Mehari, Winta's brother, testified that Gebreselassie, while wielding a gun, came in saying, "Everybody here killed Abraham, I'm going to kill you." (*Id.* at 359.) Yehferom and his brothers Angesom and Merhawi, all testified that they saw Gebreselassie, without provocation, shoot at the family. (*Id.* at 357-359.) Gebreselassie's gun was empty of bullets when the firing stopped. (*Id.*, Dkt. No. 26-15 at 874.) Gebreselassie testified that, prior to that day, he had practiced shooting at a range roughly six or seven times, and that he made sure the gun was loaded before he went to the Meharis' house. (*Id.*, Dkt. No. 26-17 at 202-205.)

Gebreselassie told a different story at trial. He said that he came to the Meharis' house at Winta's invitation, which he regarded as suspect, and was attacked by her brothers Yehferom and Merhawi soon after he entered. (*Id.*, Dkt. No. 26-24 at 361-62.) They "started cursing at him" and Merhawi threatened to "knock [him] down." (*Id.* at 361.) As Gebreselassie started to leave, Merhawi "drew a gun from his waistband." (*Id.*) Gebreselassie "pulled out his own gun, told Merhawi to put his weapon down, and fired a warning shot toward the window." (*Id.*) He testified that he acted in self-defense. (*Id.*)

There was no evidence that the Meharis fired a single shot. A second gun was found at the scene; it was discovered to have been reported stolen and was never tied to anyone present.[5] (Ans., Reporter's Transcript, Dkt. No. 26-16 at 293-294.) It had six live rounds in the magazine, the maximum such a gun could hold, indicating that no shot had been fired. (*Id.*, Dkt. No. 26-15 at 874.) Gebreselassie concedes that the Meharis never fired a shot. (Mot. for Relief, Dkt. No. 39 at 28-29.)

In 2011, an Alameda County Superior Court jury found Gebreselassie guilty of murder, premeditated attempted murder, and false imprisonment by violence. (*Id.*, Dkt.

---

[4] On appeal, the judgment as to Tewodros Gebreselassie was reversed and the matter was remanded to the trial court for further proceedings. (Ans., Dkt. No. 26-24 at 394.)

[5] Gebreselassie contends it belonged to Yehferom, as evidenced by "Yehferom's various contradictory statements for placing his gun in my possession." (Dkt. No. 39 at 27.)

3

1  No. 26-24 at 364.) The jury found true various sentencing allegations. He was sentenced
2  to three terms of life in prison without the possibility of parole, a life term, an
3  indeterminate term of 75 years to life, and a determinate term of 57 years. (*Id.*, Dkt. No.
4  26-6 at 139-144.)

Gebreselassie's attempts to overturn his convictions in state court were unsuccessful. He then filed a habeas petition in this Court. Many claims were denied, while others were dismissed as procedurally defaulted. The petition was denied and judgment entered in favor of respondent. The present motion followed.

**STANDARD OF REVIEW**

Where, as here, the court's ruling has resulted in a final judgment or order, a motion for reconsideration may be based either on Rule 59(e) or Rule 60(b) of the Federal Rules of Civil Procedure. "Under Rule 59(e), it is appropriate to alter or amend a judgment if '(1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law.'" *United Nat. Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 779 (9th Cir. 2009) (quoting *Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001)).

Rule 60(b) provides for reconsideration where one or more of the following is shown: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence that by due diligence could not have been discovered before the court's decision; (3) fraud by the adverse party; (4) voiding of the judgment; (5) satisfaction of the judgment; (6) any other reason justifying relief. *See* Fed. R. Civ. P. 60(b); *School Dist. 1J v. ACandS Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Although couched in broad terms, subparagraph (6) requires a showing that the grounds justifying relief are extraordinary. *See Twentieth Century-FoxFilm Corp. v. Dunnahoo*, 637 F.2d 1338, 1341 (9th Cir. 1981).

**DISCUSSION**

**A.  Factual Errors**

Gebreselassie alleges that I misstated that: (i) Gebreselassie testified that the

Meharis fired at him first; (ii) the second gun found at the scene was registered to Gebreselassie's brother Mulugeta; (iii) Yehferom testified that Gebreselassie said, "Everybody here killed Abraham, I'm going to kill you" while wielding two guns; and (iv) Gebreselassie changed counsel five times prior to trial. He is correct, but whether considered separately or together, the corrected facts and the factual record still do not support his habeas petition.

In the Order, I wrote that Gebreselassie testified that the Meharis fired at him first. (Order Denying Petition, Dkt. No. 33 at 2.) That was wrong. In fact, he testified that soon after he entered the apartment, Merhawi threatened to knock him down and drew a gun from his waistband. (Ans., State Appellate Opinion, Dkt. No. 26-24 at 361-62.)

I relied on the mistaken fact in part to support my conclusion that Gebreselassie's self-defense contentions were "severely undermined." (Dkt. No. 33 at 3.) Absent the mistaken fact, my conclusion remains unchanged because there was other strong evidence of guilt. The record supports that: Gebreselassie fiercely hated the Meharis; the Meharis banned him from their house because of his continued accusations against him and said they would call the police if he came there again; he came armed with a gun to their house uninvited on Thanksgiving, when he knew the family would be gathered; and, according the Mehari brothers, he fired shots without provocation, killing several and wounding others.

In my Order, I stated that the second gun found at the scene was registered to Gebreselassie's brother Mulugeta. (Dkt. No. 33 at 3; Mot. for Relief, Dkt. No. 39 at 4.) That was a mistake. Mulugeta was the registered owner of the gun Gebreselassie used to kill and wound the members of the Mehari family. The second gun had been reported stolen by its registered owner, and it is unclear who brought it to the Meharis apartment.

I also made an error regarding Yehferom's testimony. I wrote, "Yehferom testified that Gebreselassie, while wielding two guns, came in saying, 'Everybody here killed Abraham, I'm going to kill you.'" (Dkt. No. 33 at 2.) Yehferom did indeed testify that Gebreselassie said "Everyone here killed Abraham, I'm going to kill you" as he strode into

the room. (Ans., Dkt. No. 26-15 at 385.) But he did <u>not</u> testify that Gebreselassie entered while wielding two guns. Rather, Yehferom testified that petitioner entered "carrying a gun in his right hand and a plastic bag in his left hand." (*Id.*, Dkt. No. 26-24 at 359.)[6]

None of these factual errors, considered separately or together, entitles Gebreselassie to relief. As I wrote earlier, the evidence of his guilt was strong. To repeat, the record supports that: Gebreselassie fiercely hated the Meharis; the Meharis banned him from their house because of his continued accusations against him and said they would call the police if he came to their house again; he came armed with a gun to their house uninvited on Thanksgiving, when he knew the family would be gathered; and, according the Mehari brothers, he fired shots without provocation, killing several and wounding others. That he only wielded one gun instead of two, that the second gun was stolen rather than registered to his brother, and that he told the jury that the Meharis did not shoot at him does not materially diminish the strength of the evidence against Gebreselassie.

Finally, I erroneously stated that he changed counsel five times, and it appears that he had as many as six changes of counsel.[7] Whatever the final number, Gebreselassie has not shown how that mistake could entitle him to relief.

## B. Legal Claims

The other contentions Gebreselassie raises in his motion reiterate claims he presented before and that I have considered and rejected. These reiterated contentions

---

[6] I misread the following passage from the state appellate court opinion: "[During the initial police investigation,] Yehferom said Asmerom [Gebreselassie] entered holding two silver handguns. When asked whether Asmerom fired both of the guns or just one, Yehferom said just one, and added that Asmerom was carrying a gun in his right hand and a plastic bag in his left." (Dkt. No. 26-24 at 359.)

[7] Gebreselassie was first represented by two public defenders (Plumhoff and Lew); next he was represented by a private attorney, Dubois; Dubois was relieved and Lew reappointed; Lew was relieved and Cole, another private attorney, was appointed; Cole was relieved and the public defender reappointed; the public defenders were relieved and Dubois was reappointed; Dubois was relieved and Stallworth appointed and he remained counsel through trial. That makes six changes of counsel: (1) public defenders to Dubois; (2) Dubois to Lew; (3) Lew to Cole; (4) Cole to public defender; (5) public defender to Dubois; and (6) Dubois to Stallworth.

make no showing of newly-discovered evidence, or that I committed clear error or made an initial decision that was manifestly unjust, or that there was an intervening change in controlling law.[8] *See* Fed. R. Civ. P. 59(e); *United Nat. Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 779 (9th Cir. 2009) (quoting *Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001)). Nor do these reiterated contentions make a showing of newly-discovered evidence or of any mistake, inadvertence, surprise, excusable neglect, fraud by the adverse party, or voiding of the judgment; plaintiff offers no other reason justifying relief. *See* Fed. R. Civ. P. 60(b); *School Dist. 1J v. ACandS Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). I also find no reason to reconsider its dismissal of many claims as procedurally defaulted.

One point is worth noting. Gebreselassie asserts that "the case was a credibility contest between the key prosecution witnesses (the Mehari brothers), on the one hand, and my co-defendant (my brother Tewodros) and me, on the other," (Dkt. No. 39 at 6), an idea he repeats often in his papers. That assertion dooms his habeas petition. He essentially asks me to credit his account of events and, unlike the jury, to reject the prosecution's case as not credible. This I cannot do. I cannot redetermine credibility.[9] I can look only to see whether the state court's rejection of Gebreselassie's claims was reasonable. To prevail on this standard, Gebreselassie must show that there was "no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This he has not done. There was strong evidence to support the state court's decision, as detailed in the

---

[8] The Court dismissed as procedurally defaulted Gebreselassie's claims that appellate counsel rendered ineffective assistance. The default should have been excused, according to Gebreselassie, based on the equitable rule in *Martinez v. Ryan*, 566 U.S. 1 (2012). (Dkt. No. 39 at 45.) *Martinez* applies only to claims of ineffective assistance of trial counsel, however. *Davila v. Davis*, 137 S. Ct. 2058, 2061 (2017).

[9] A federal habeas court in general does not question a jury's credibility determinations, which are entitled to near-total deference. *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004). Indeed, if confronted by a record that supports conflicting inferences, a federal habeas court "must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson v. Virginia*, 443 U.S. 307, 326 (1979).

7

factual background of this section, which *omitted* the factual errors Gebreselassie raises in his motion for relief.

## CONCLUSION

The motion for relief is DENIED. (Dkt. No. 39.)

A certificate of appealability will not issue. Gebreselassie has not shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Clerk shall terminate Dkt. No. 39.

**IT IS SO ORDERED.**

**Dated:** April 22, 2019



WILLIAM H. ORRICK
United States District Judge